**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* [UNDER SEAL],<br><br>                          Plaintiff,<br><br>     vs.<br><br>[UNDER SEAL],<br><br>                         Defendant. | Case No. ___[UNDER SEAL]____<br><br><u>JURY TRIAL DEMANDED</u><br><br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**<u>UNDER SEAL</u>**<br>**Pursuant to 31 U.S.C. § 3730(b)(2)** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA; and

THE STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN; and THE DISTRICT OF COLUMBIA,

*ex rel.* WILLIAM NASH, JR. ,

                          Plaintiff,

    vs.

UCB, INC.,

                  Defendant.

Case No. 14-CV-2218

<u>JURY TRIAL DEMANDED</u>

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729, *ET SEQ.*; CALIFORNIA FALSE CLAIMS ACT [CAL. GOVT. CODE § 12650 *ET SEQ.*]; COLORADO MEDICAID FALSE CLAIMS ACT [COLO. REV. STAT. § 25.5-4-303 *ET SEQ.*]; CONNECTICUT FALSE CLAIMS ACT FOR MEDICAL ASSISTANCE PROGRAMS [CONN. GEN. STAT. § 17B-301A *ET SEQ.*]; DELAWARE FALSE CLAIMS AND FALSE REPORTING ACT [6 DEL. C. § 1201); FLORIDA FALSE CLAIMS ACT [FLA. STAT. ANN. § 68.081 *ET SEQ.*]; GEORGIA FALSE MEDICAID CLAIMS ACT [GA. CODE ANN. § 49-4-168 *ET SEQ.*]; HAWAII FALSE CLAIMS ACT [HAW. REV. STAT. § 661-21 *ET SEQ.*]; ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT [740 ILL. COMP. STAT. § 175 *ET SEQ.*]; IOWA FALSE CLAIMS ACT [IOWA CODE § 685.1 *ET SEQ.*; INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT [IND. CODE ANN. § 5-11-5.5-1 *ET SEQ.*]; LOUISIANA MEDICAL ASSISTANCE PROGRAM INTEGRITY LAW [LA. REV. STAT. § 46:437.1 *ET SEQ.*]; MARYLAND FALSE HEALTH CLAIMS ACT [MD CODE ANN. § 2-601 *ET SEQ.*]; MASSACHUSETTS FALSE CLAIMS**

LAW [MASS GEN LAWS CH.12 § 5 *ET SEQ.*]; MICHIGAN MEDICAID FALSE CLAIMS ACT [MICH. COMP. LAWS. § 400.601 *ET SEQ.*]; MINNESOTA FALSE CLAIMS ACT [MINN. STAT. 15C.01 *ET SEQ.*]; MONTANA FALSE CLAIMS ACT [MONT. CODE ANN. § 17-8-401 *ET SEQ.*]; NEVADA FALSE CLAIMS ACT [NEV. REV. STAT. ANN. § 357.010 *ET SEQ.*]; <u>NEW HAMPSHIRE FALSE CLAIMS ACT [N.H. REV. STAT. ANN. § 167:61-B *ET SEQ.* ]</u>; NEW JERSEY FALSE CLAIMS ACT, N.J. STAT. § 2A:32C-1, *ET SEQ.*; NEW MEXICO MEDICAID FALSE CLAIMS ACT [N.M. STAT ANN. § 27-2F-1 *ET SEQ.*]; NEW YORK FALSE CLAIMS ACT [N.Y. STATE FIN. § 187 *ET SEQ.*]; NORTH CAROLINA FALSE CLAIMS ACT [N.C.G.S. § 1-605 *ET SEQ.*]; OKLAHOMA MEDICAID FALSE CLAIMS ACT [OKLA. STAT. TIT. 63 § 5053 *ET SEQ.*]; RHODE ISLAND FALSE CLAIMS ACT [R.I. GEN. LAWS. § 9-1.1-1 *ET SEQ.*]; TENNESSEE FALSE CLAIMS ACT AND TENNESSEE MEDICAID FALSE CLAIMS ACT [TENN. CODE ANN. § 4-18-101 *ET SEQ.* AND § 71-5-181 *ET SEQ.*]; TEXAS MEDICAID FRAUD PREVENTION LAW [TEX. HUM. RES. CODE ANN. § 36.001 *ET SEQ.*]; VIRGINIA FRAUD AGAINST TAXPAYERS ACT [VA. CODE ANN. § 8.01-216.1 *ET SEQ.*]; WASHINGTON STATE MEDICAID FRAUD FALSE CLAIMS ACT [RCW § 74.66.005 *ET SEQ.*]; WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT [WIS. STAT § 20.931 *ET SEQ.*]; AND DISTRICT OF COLUMBIA PROCUREMENT REFORM AMENDMENT ACT [D.C. CODE ANN. § 1-1188.13 *ET SEQ.*]

**UNDER SEAL**
**Pursuant to 31 U.S.C. § 3730(b)(2)**

Plaintiff and *qui tam* Relator, William Nash, Jr. on behalf of the United States of America (the "United States" or the "Government") and on behalf of the sovereign states of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, Wisconsin, and the District of Columbia (collectively, "Plaintiff States"), brings this action pursuant to the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"), and the relevant provisions of the false claims acts of the Plaintiff States against Defendant UCB, Inc.  In support thereof, Relator alleges as follows:

## I.     INTRODUCTION

1.      Relator brings this action under the False Claims Act against Defendant to recover underpaid rebates owed to the Medicaid Program.  Medicaid is a federally-funded health care program that provides basic medical insurance benefits for certain groups, primarily the poor and disabled.  Medicaid pays billions of dollars to providers annually using taxpayer funds.  Among other goods and services, Medicaid pays for covered outpatient drugs prescribed to eligible Medicaid recipients.

2.      Under the Medicaid Rebate Statute, as a condition of coverage of its prescription drugs, a manufacturer must have in effect a Rebate Agreement with CMS, on behalf of the States.  The Medicaid Rebate Statute and implementing regulations impose, among other requirements, timely price reporting obligations, which include the reporting of Average Manufacturer Prices and Best Price on a quarterly basis.

3.      As detailed below, Relator has direct and personal knowledge that Defendant intentionally violated Medicaid rules and regulations as well as its Rebate Agreement with CMS regarding the reporting and retaining of overpayments of rebates from CMS and State Medicaid

programs. As a result, Defendant not only violated its condition of coverage for payment of its prescription drugs, but also improperly avoided its express obligation to return such overpayment of rebates to the United States in violation of the False Claims Act.

## II.    JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 31 U.S.C. §§ 3732(a) and (b), which confer jurisdiction over actions brought under 31 U.S.C §§ 3729 and 3730 and parallel provisions of the State False Claims Acts. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

5.      This Court has personal jurisdiction over Defendant, and venue is proper in this District, pursuant to 31 U.S.C. § 3732(a) because Defendant is found, transacts business, and committed violations of 31 U.S.C. § 3729 in this District.

6.      This action is not based upon prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation; in a Government Accountability Office or Auditor General's report, hearing, audit, or investigation; in news media; or in any other form as the term "publicly disclosed" is defined in 31 U.S.C. § 3730(e)(4)(A) and parallel provisions of the State False Claims Acts.

7.      To the extent there has been a public disclosure of any of Relator's allegations herein, he is an original source of those allegations within the meaning of 31 U.S.C. § 3730(e)(4)(B) and parallel provisions of the State False Claims Acts.

8.      Pursuant to 31 U.S.C. § 3730(b)(2), along with this Complaint, Relator will prepare and serve on the Attorney General of the United States and the United States Attorney for the Southern District of New York a written disclosure of all material evidence and information currently in his possession. This written disclosure will be supported by material evidence known to Relator at the time of filing this Complaint establishing the existence of

Defendant's fraudulent conduct, which resulted in economic loss to the government. Because the information includes attorney-client communications and work product of Relator's attorneys, and will be submitted to those Federal and State officials in their capacity as potential co-counsel in the litigation, Relator understands his disclosures to be confidential and exempt from disclosure under the Freedom of Information Act. 5 U.S.C. § 552; 31 U.S.C. § 3729(c).

## III. PARTIES

9. The United States and Plaintiff States are the real plaintiffs in interest with respect to the claims asserted herein. The defrauded Medicaid Program is administered and supervised by the Centers for Medicare & Medicaid Services ("CMS"), a division of the United States Department of Health & Human Services ("HHS").

10. **Defendant UCB, Inc.** ("UCB") is the United States affiliate of UCB S.A., a global biopharmaceutical company with operations in approximately 40 countries, with its US corporate headquarters located in Smyrna, Georgia. UCB was established in the U.S. in 1994 through the acquisition of Whitby Pharmaceuticals and Northhampton Medical. UCB acquired Celltech in June 2004, and acquired majority shares of Schwarz Pharma AG in December 2006, enriching UCB product development and pipeline and making it the world's fifth-largest biopharma company.

11. UCB participates in the Medicaid Rebate Program pursuant to its Medicaid Rebate Agreement with CMS through which it pays State Medicaid Programs rebates in exchange for coverage of its drugs prescribed to Medicaid beneficiaries.

12. **William Nash** is a citizen of the United States and a resident of the State of Georgia. He received his Bachelor's degree from the U.S. Naval Academy and served in the Navy for eight years. Mr. Nash also received his M.B.A. from the University of Pennsylvania's Wharton business school. He was employed as UCB's Cimzia Chief Financial Officer from

March 2013 until February 2014.  During his tenure as UCB's Cimzia Chief Financial Officer, Mr. Nash reported to Ravi Ravindran. Mr. Nash began working with UCB in 2007 and served as the United States Controller of UCB from July 2011 through March 2013.

## IV.     LEGAL AND REGULATORY BACKGROUND

### A.     The False Claims Act

13.     The FCA, 31 U.S.C. § 3729-33, provides for the award of treble damages and civil penalties for, *inter alia*, knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the United States Government.  31 U.S.C. § 3729(a)(1)(G).

14.     The FCA provides, in pertinent part, that:

(a) Liability for certain acts.

(1) …any person who--

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals **or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,**

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

(b) For purposes of this section,

(1) the terms "knowing" and "knowingly"—(A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information, and (B) require no proof of specific intent to defraud.

***

(3) the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and

31 U.S.C. §§ 3729(a)(1), (b) (2009). (emphasis added).

15.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103 (1999), the FCA civil penalties were adjusted to $5,500 to $11,000 for violations occurring on or after September 29, 1999.

**B.     The Medicaid Program**

16.     Medicaid is a joint federal-state program created in 1965 that provides health care benefits for certain groups, primarily the poor and disabled. The federal portion of each state's Medicaid payments, known as the Federal Medical Assistance Percentage ("FMAP"), is based on the state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). Among the states, the FMAP is at least 50 percent and is as high as 83 percent.

17.     The Medicaid programs of all states reimburse for prescription drugs. The vast majority of states award contracts to private companies to evaluate and process claims for payment on behalf of Medicaid recipients. Typically, after processing the claims, these private companies then generate funding requests to the state Medicaid programs. Before the beginning of each calendar quarter, each state submits to CMS an estimate of its Medicaid federal funding needs for the quarter. CMS reviews and adjusts the quarterly estimate as necessary, and determines the amount of federal funding each state will be permitted to draw down as it incurs expenditures during the quarter. The state then draws down federal funding as actual provider claims, including claims from pharmacies seeking payment for drugs, are presented for payment.

After the end of each quarter, the state then submits to CMS a final expenditure report, which provides the basis for adjustment to the quarterly federal funding amount (to reconcile the estimated expenditures to actual expenditures). 42 C.F.R. § 430.30.

18.     The federal Medicaid statute sets forth the minimum requirements for state Medicaid programs to qualify for federal funding. 42 U.S.C. § 1396a.

19.     The federal Medicaid statute requires each participating state to implement a plan containing certain specified minimum criteria for coverage and payment of claims. 42 U.S.C. §§ 1396, 1396a(a)(13), 1396a(a)(30)(A).

20.     The Medicaid Rebate Statute generally prohibits federal financial participation for a covered outpatient drug unless there is a Rebate Agreement in effect with the manufacturer for that drug. 42 U.S.C. §§ 1396r–8(a)(1) and (b)(1). Once a drug manufacturer has entered into a rebate agreement for a covered outpatient drug, a state is generally required to cover that drug under the state plan. 42 U.S.C. §§ 1396r–8(a), (d).

21.     Under the Rebate Statute, the manufacturer of a covered outpatient drug that signs a Medicaid Rebate Agreement with the government must report pricing data, including a drug's Average Manufacturing Price ("AMP") and Best Price ("BP").

22.     This pricing data, in turn, is used to calculate the rebates owed by manufacturers to the States in exchange for coverage and payment of the manufacturer's covered outpatient drugs. 42 U.S.C. §§ 1396r–8(b), (c). Manufacturers must pay Medicaid rebates on their covered outpatient drugs, otherwise States generally will not receive Federal Medicaid matching payments for use of those drugs.

23.     Manufacturers must provide accurate quarterly AMP and BP data in a timely manner to ensure that the States receive the appropriate rebate amounts.

24.    In addition, manufacturers must provide accurate and timely monthly AMP and BP data as this is used to establish Federal upper limit ("FUL") amounts in the Medicaid program.    Failure to provide accurate AMP data on a timely basis affects state and FUL calculations.

25.    Pursuant to CMS Manufacturer Release 61, "Manufacturers must report revisions to AMP or best price for a period not to exceed 12 quarters from the quarter in which the data were due."  Medicaid Drug Rebate Program Release No. 61 (September 23, 2003), "Publication of Drug Rebate Regulations CMS-2175-FC; AMP - Calculation Methodology Revision," at 1. Release No. 61 continues:

> As is the case with all pricing data submitted under the Medicaid drug rebate program, if a subsequent review of the manufacturers' pricing data by CMS, the OIG, or another authorized government agency determines or reveals that adjustments or revisions are necessary irrespective of the quarter, the manufacturer is bound under the statute and the Medicaid Drug Rebate Agreement to comply with that determination.

*Id.* at 2.

26.    In CMS Manufacturer Release 78, issued on June 26, 2007, CMS responded to requests from manufacturers with pending AMP and BP recalculation submissions:

> We have received requests from manufacturers with pending recalculation submissions that CMS authorize prospective changes in the methodology used, by the manufacturer to calculate Average Manufacturer Price (AMP) and/or best price. Effective immediately, a manufacturer with a pending recalculation request may implement the revised pricing methodology on a prospective basis beginning with the date it notified us of the recalculation.
>
> Additionally, a manufacturer with a new recalculation request regarding AMP and/or best price (submitted to CMS after the date of this release) may proceed with implementing the revised pricing methodology on a prospective basis without further review by CMS. We continue to request that manufacturers notify CMS and receive authorization in advance of any retroactive change in the method used to calculate their AMP and/or best price, along with

> revised AMP and/or best price data for the drugs affected, the
> relevant 11-digit NDC numbers, the fiscal magnitude of the
> change, and a statement as to the reason for the change in
> methodology.

Medicaid Drug Rebate Program Release No. 78 (June 26, 2007), "Manufacturer Assumptions for Monthly AMP Methodology," at 2. CMS repeated the paragraph from Release No. 61 that the manufacturer is bound by any subsequent determination by CMS or authoritative agency should any adjustment to the manufacturer's rebate liability be made. *Id.*

27.     The Rebate Agreement requires each participating manufacturer to submit to CMS a listing of all covered outpatient drugs, within 30 days of signing the rebate agreement. Medicaid Drug Rebate Program Release No. 2 (August 9, 1991), at 1.

28.     The manufacturer must update all of the information within 30 days of the end of each quarter; (e.g., April 30, July 30, October 30 and January 30 for the quarters ending March 3l, June 30, September 30 and December 31, respectively). *Id.*

29.     Release No. 2 further states that timely submission of quarterly data by the manufacturer is critical because CMS has to provide the States with a complete update file 45 days after the end of each quarter. *Id*. at 2.

30.     The quarterly and monthly reports, as well as any recalculation submission must be certified by either:   (1) the manufacturer's chief executive officer (CEO); (2) the manufacturer's chief financial officer CFO; (3) an individual other than a CEO or CFO, who has authority equivalent to a CEO or a CFO; or, (4) an individual with the directly delegated authority to perform the certification on behalf of an individual described in (1) through (3). 42 C.F.R. 447.510(e).

31.     The States in turn can use CMS's updated file in preparing the utilization reports which are due to manufacturers no later than 60 days after the end of the quarter. *Id.*

32.     "As required by the rebate legislation, and as specified in the rebate agreement, manufacturers must pay rebates to State rebates <u>within 30 days of receipt of State utilization data</u>." Manufacturer Medicaid Drug Rebate Program Release No. 3 (December 26, 1991), at 2 (emphasis in original).

33.     Because of the flow and timing of the information necessary to calculate rebates, manufacturers are necessarily liable to the United States and the Plaintiff States for any underpayment of rebates. To retain rebate overpayments is to avoid an obligation to transmit money to the government and is a violation of the reverse false claim provision of the FCA as set forth in section (a)(1)(G) and the respective State False Claims Acts.

34.     In addition, the Medicaid Rebate Statute imposes civil monetary penalties of $10,000 per day for manufacturers that fail to provide and certify timely recalculated pricing data in complying with their reporting requirements under the Rebate Program. 42 U.S.C. 1396r–8(b)(3)(C).

## V.     DEFENDANT'S REVERSE FALSE CLAIMS

### A.     UCB Has a Duty to Return the Government's Overpayments

35.     As an active participant in the Medicaid Program, UCB was required to enter into a Medicaid Rebate Agreement with HHS and the States, including the Plaintiff States.

36.     As required under the Medicaid Statute and its Rebate Agreement with CMS, UCB was required to pay rebates to CMS in exchange for coverage by Medicaid. UCB was also required to pay rebates in exchange for government subsidized payments of its outpatient drugs the company had registered with CMS.

37.     On January 30, 2006, UCB submitted a recalculation notice to CMS. The recalculation notice was in response to CMS guidance concerning proper implementation methods for retroactive changes used to determine AMP and BP calculations. UCB had

determined that the changes were "necessary to adhere to the Medicaid Statute, 42 U.S.C. § 1396r-8, Rebate Agreement, regulations, and guidance documents."

38.     At that time UCB informed CMS that it would apply this new method of calculation prospectively beginning with the fourth quarter of 2005. UCB also stated that it was in the process of applying it retroactively to the three year period that predated the initiation of the review, from the second quarter of 2002 through the third quarter of 2005 (2Q2002 - 3Q2005) and upon completion would "submit to CMS the recalculated AMPs."

39.     On March 29, 2007, over one year later, UCB sent a letter to CMS communicating that it had completed the process of applying the revised methodologies to the three year (twelve quarter) period that predated the initiation of their review – the 2Q2002 - 3Q2005 period.  UCB determined based upon its calculations that it had underpaid $18.7M in rebates to the government. UCB stated in the letter that it would "wait to submit these revised AMP and BP figures for processing until it receives CMS' approval to do so."

40.     On November 21, 2008, CMS responded to UCB's recalculation notification and advised the company that a manufacturer with a pending recalculation request may implement the revised pricing methodology without prior review.  CMS further instructed UCB to contact the Division of State Systems to obtain instructions regarding the resubmission process for the recalculations.

41.     Notwithstanding this instruction, UCB exploited CMS's letter as an opportunity to avoid its obligation to remit the pending overpayment in its entirety.  In the intervening three years and three months since CMS's instruction, UCB failed to remit its rebate underpayment liability. During this period, UCB's corporate management knowingly and officially endorsed the position that the Company would not have to satisfy its legal obligation to pay the rebates.

42.     In addition to flouting CMS's explicit instructions to begin the resubmission process, UCB violated its express legal obligation to remit the overpayment, which arose under the FCA at the date of enactment (a)(1)(G) in 2009 which states that "any person who . . . _knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government._" It defines an "obligation" as "an established duty, whether or not fixed, arising from . . . the retention of any overpayment."

43.     UCB's obligation to remit payment was further reinforced in September 2010, when the Department of Health and Human Services (DHHS) Office of Inspector General (OIG) issued a Special Advisory Bulletin expressing concern that "certain manufacturers have failed to submit required product and pricing data in a timely fashion."

44.     The Bulletin also announced that OIG was initiating "an enforcement initiative to promote increased compliance with the reporting requirements related to the Medicaid Drug Rebate Program," noting that the OIG "enforcement initiative concerning the timely submission of data [is] necessary to the effective operation the Medicaid Drug Rebate Program." Two years after OIG issued this public statement, UCB continues to retain the overpayment.

45.     The pharmaceutical industry was aware of the potential False Claims Act liability resulting from the 2009 amendments. On February 2, 2012, CMS published a Proposed Rule that would have modified the resubmission process. The agency noted that the rule was partially in response to concerns by the pharmaceutical industry that the overpayments would lead to False Claims Act liability

46.     Further evidencing UCB's knowledge that its retention of the overpayments was illegal, Biotechnology Industry Organization ("BIO"), an industry lobbying organization whose

members include UCB, wrote a letter to CMS on April 2, 2012 stating that it interpreted the Proposed Rule to create an option for companies to return overpayments without creating a duty.

**B. UCB Knowingly and Improperly Avoided Its Obligation to Return the Overpayments**

47.     Mr. Nash first became aware of the $18.7 million rebate overpayment in or about October 2011, soon after he became the U.S. Controller, during an end of year accounting meeting attended by Scott Gee, North American CFO, Shannon Bryan, Manager of Gross to Net, and Barbara Neville, Director of Accounting for North America. The attendees reviewed UCB's liabilities, including the overpayment, which was held as a special reserve on UCB's balance sheet.

48.     Over the two to three year period, there were a series of semi-annual and end-of-year meetings with UCB team members to address the company's Gross to Net position and the associated liabilities during large group working sessions or review and approval meetings. While the attendees of the meetings were fluid due to various restructurings during this time period as well as the different audiences for the meetings, the meetings were variously attended by Ravi Ravindran (Bio-Brands Solution CFO), Shannon Bryan, Jay Janko (Director of Contracting), Barbara Nevill (Director of Accounting), Tonja Pitts (Central Nervous System North America Controller), Stu Litwer (Forecasting), Brandon Drew (Sr. Director Contracting) Tanuja Singi(North America Accounting),  Alice Sue Claeys (IBU NA Controller), Nancy Halliday (Asst. Controller), Kacie Sengvaciex, and Bill Nash.

49.     During these meetings, there was a consensus that UCB should not take any action with regard to the liability, and that the onus was on CMS to request the funds again.   The tenor of the meeting was that it was clear that UCB had no intention of further engagement with

CMS on the issue or effort to work out a payment strategy, despite UCB's acknowledgement that it did owe the funds.

50.     In order to substantiate the special reserve liability, UCB retained the letters to CMS and CMS's response and maintained them as their "backup" for the liability. This backup was shown to outside auditors when they asked about the liability.

51.     In addition to meetings, Mr. Nash discussed the special reserve liability during several individual conversations with employees, including Ravi Ravindran, Scott Gee, Shannon Bryan, Brandon Drew, and Jay Janko.  During this period, Mr. Nash wondered why the company did not release the reserve liability even though so much time had passed.

52.     Mr. Nash learned from these conversations that UCB had made no attempt whatsoever to reach out to CMS after receiving CMS' letter, that UCB's position was to retain the overpayment until CMS contacted them again for the money, and that UCB believed that CMS would never request the money from UCB because of how much time had already passed.

53.     Due to Mr. Nash's questioning of senior officials, including his manager, Ravi Ravindran, the issue was discussed in an Executive Committee meeting in Brussels in December 2013. During an end-of-year Gross to Net meeting in or about January, 2014, Mr. Ravindran told Mr. Nash that in the Executive Committee meeting it was decided that the company would retain this accrual as a reserve liability on the company's balance sheet rather than reverse the accrual to income.

54.     Mr. Nash's communications with corporate management led him to conclude that if UCB had in fact been contacted by CMS, regarding the underpaid rebates, the company would remit the payment.

55.     Throughout the relevant period, UCB has delayed, and continues to delay, the completion of its obligations under the Medicaid Rebate Program, in hope that CMS would simply forget about its and the States' entitlement to the repayments.  UCB's knowing retention of the overpayments throughout this period and through to the present violates the reverse claims provision of the False Claims Act.

56.     Further, UCB has failed to formally certify its recalculation submission for the 2Q2002 – 3Q2005 period to facilitate its rebate underpayments.  Thus, UCB was, and continues to be, untimely in its recalculation submission for this time period and is further subject to the civil monetary penalties provision under the Medicaid Rebate Statute.  UCB's failure to fulfill its obligation to pay these amounts arising from OIG's 2010 implementation of the OIG enforcement initiative also violates the reverse claims provision of the False Claims Act.

57.     UCB's intentional avoidance of returning the government's money is all the more apparent when contrasted with its handling of a government contracting issue in another context that did not present an opportunity to UCB to enrich itself. The Contract and Pricing group – the same group responsible for handling the overpayment in question – was responsible for managing the rebate information for Managed Medicaid Fee for Service drug sales. UCB also carried a special reserve to account for the rebates that were owed to the various states.

58.     The Contract and Pricing group spent approximately 20 hours per month over a period of several years contacting state representatives to verify the relevant sales information in order to properly process rebates under those contracts. UCB knew that, in this context, the states would eventually call to request the money as a matter of course, so there was no downside to handling the rebates responsibly. A similarly proactive approach to working with CMS to enable

them to recover the overpayments was likewise warranted. But UCB has instead deliberately and consistently remained passive.

59.     UCB could also have reported the overpayment through the OIG Self-Disclosure Program, available for companies that decide to disclose possibly fraudulent and abusive activities. The Self-Disclosure Protocol notes that users availing themselves of the Program may limit their liability under the False Claims Act and the Civil Monetary Penalties Law. It also allows users to take advantage of a lower multiple than is typically required to resolve a Government-initiated investigation. The minimum multiplier used by the OIG is 1.5 times single damages. Further, if the OIG determines that there was no fraud, it simply recoups the overpayment.

60.     Thus, throughout the relevant period, the Self-Disclosure Protocol has offered UCB a payment pathway that would return the overpayments to the Government without requiring any communication with CMS at all. Insofar as UCB may have concluded that its retention of overpayments does not amount to a fraud, UCB should also have concluded that it could pursue this alternative payment pathway without incurring any additional cost or liability to the company.

## COUNT I
### Defendant Violated the Reverse False Claims Provision of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(G)

61.     Relator incorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

62.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

63. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

64. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

65. Defendant had knowledge (as defined by the False Claims Act, 31 U.S.C. § 3729(b)(1)(A)) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

66. As a result of the Defendant's actions as set forth above in this Complaint, the United States of America has been, and continues to be, severely damaged.

## COUNT II
## Defendant Violated the Reverse False Claims Provision of the California False Claims Act
## Cal. Govt. Code § 12650 et seq.

67. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

68. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of California, in violation of Cal. Govt. Code § 12650 et seq..

69. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

70.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

71.     Defendant had knowledge (as defined by Cal. Govt. Code § 12650 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

72.     As a result of the Defendant's actions as set forth above in this Complaint, the State of California has been, and continues to be, severely damaged.

**COUNT III**
**Defendant Violated the Reverse False Claims Provision of the Colorado Medicaid False Claims Act**
**Colo. Rev. Stat. § 25.5-4-303 *et seq.***

73. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

74.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Colorado, in violation of Colo. Rev. Stat. § 25.5-4-303 *et seq.*.

75.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

76.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

77. Defendant had knowledge (as defined by Colo. Rev. Stat. § 25.5-4-303 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

78. As a result of the Defendant's actions as set forth above in this Complaint, the State of Colorado has been, and continues to be, severely damaged.

**COUNT IV**
**Defendant Violated the Reverse False Claims Provision of the Connecticut False Claims**
**Act for Medical Assistance Programs**
**Conn. Gen. Stat. § 17b-301a *et seq.***

79. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

80. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Connecticut, in violation of Conn. Gen. Stat. § 17b-301a *et seq.*.

81. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

82. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

83. Defendant had knowledge (as defined by the Conn. Gen. Stat. § 17b-301a *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the

requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

84. As a result of the Defendant's actions as set forth above in this Complaint, the State of Connecticut has been, and continues to be, severely damaged.

**COUNT V**
**Defendant Violated the Reverse False Claims Provision of the Delaware False Claims And Reporting Act**
**6 Del. C. § 1201**

85. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

86. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Delaware, in violation of 6 Del. C. § 1201.

87. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

88. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

89. Defendant had knowledge (as defined by 6 Del. C. § 1201) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

90.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Delaware has been, and continues to be, severely damaged.

**COUNT VI**
**Defendant Violated the Reverse False Claims Provision of the Florida False Claims Act**
**Fla. Stat. Ann. § 68.081 *et seq.*

91. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

92.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Florida, in violation of Fla. Stat. Ann. § 68.081 *et seq.*.

93.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

94.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

95.     Defendant had knowledge (as defined by Fla. Stat. Ann. § 68.081 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

96.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Florida has been, and continues to be, severely damaged.

## COUNT VII
## Defendant Violated the Reverse False Claims Provision of the Georgia State False Medicaid Claims Act
### Ga. Code Ann. § 49-4-168 *et seq.*

97. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

98. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Georgia, in violation of Ga. Code Ann. § 49-4-168 *et seq.*.

99. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

100. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

101. Defendant had knowledge (as defined by Ga. Code Ann. § 49-4-168 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

102. As a result of the Defendant's actions as set forth above in this Complaint, the State of Georgia has been, and continues to be, severely damaged.

## COUNT VIII
## Defendant Violated the Reverse False Claims Provision of the Hawaii False Claims Act
## Haw. Rev. Stat. § 661-21 et seq.

103.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

104.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Hawaii, in violation of Haw. Rev. Stat. § 661-21 et seq..

105.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

106.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

107.    Defendant had knowledge (as defined by Haw. Rev. Stat. § 661-21 et seq.) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

108.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Hawaii has been, and continues to be, severely damaged.

## COUNT IX
## Defendant Violated the Reverse False Claims Provision of the Illinois Whistleblower
## Reward And Protection Act (as amended)
## 740 Ill. Comp. Stat. § 175 *et seq.*

109.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

110.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Illinois, in violation of 740 Ill. Comp. Stat. § 175 *et seq.*.

111.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

112.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

113.    Defendant had knowledge (as defined by 740 Ill. Comp. Stat. § 175 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

114.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Illinois has been, and continues to be, severely damaged.

## COUNT X
## Defendant Violated the Reverse False Claims Provision of the Indiana False Claims and Whistleblower Protection Act
## Ind. Code Ann. § 5-11-5.5-1 *et seq.*

115.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

116.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Indiana, in violation of Ind. Code Ann. § 5-11-5.5-1 *et seq.*.

117.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

118.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

119.     Defendant had knowledge (as defined by Ind. Code Ann. § 5-11-5.5-1 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

120.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Indiana has been, and continues to be, severely damaged.

## COUNT XI
## Defendant Violated the Reverse False Claims Provision of the Iowa False Claims Act
## Iowa Code § 685.1 *et seq.*

121.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

122.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Iowa, in violation of Iowa Code § 685.1 *et seq.*.

123.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

124.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

125.     Defendant had knowledge (as defined by Iowa Code § 685.1 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

126.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Iowa has been, and continues to be, severely damaged.

## COUNT XII
## Defendant Violated the Reverse False Claims Provision of the Louisiana Medical Assistance Programs Integrity Law
## La. Rev. Stat. § 46:437.1 *et seq.*

127.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

128.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Louisiana, in violation of La. Rev. Stat. § 46:437.1 *et seq.*.

129.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

130.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

131.     Defendant had knowledge (as defined by La. Rev. Stat. § 46:437.1 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

132.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Louisiana has been, and continues to be, severely damaged.

**Defendant Violated the Reverse False Claims Provision of the Maryland False Health Claims Act**
**MD Code Ann. § 2-601 *et seq.***

133.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

134.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Maryland, in violation of MD Code Ann. § 2-601 *et seq.*.

135.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

136.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

137.     Defendant had knowledge (as defined by MD Code Ann. § 2-601 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

138.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Maryland has been, and continues to be, severely damaged.

## COUNT XIV
## Defendant Violated the Reverse False Claims Provision of the Massachusetts False Claims Law
## Mass Gen Laws ch.12 § 5 *et seq.*

139.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

140.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Commonwealth of Massachusetts, in violation of Mass Gen Laws ch.12 § 5 *et seq.*.

141.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

142.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

143.     Defendant had knowledge (as defined by Mass Gen Laws ch.12 § 5 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

144.     As a result of the Defendant's actions as set forth above in this Complaint, the Commonwealth of Massachusetts has been, and continues to be, severely damaged.

## COUNT XV
## Defendant Violated the Reverse False Claims Provision of the Michigan Medicaid False Claim Act
## Mich. Comp. Laws. § 400.601 *et seq.*

145.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

146.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Michigan, in violation of Mich. Comp. Laws. § 400.601 *et seq.*.

147.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

148.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

149.    Defendant had knowledge (as defined by Mich. Comp. Laws. § 400.601 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

150.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Michigan has been, and continues to be, severely damaged.

## COUNT XVI
## Defendant Violated the Reverse False Claims Provision of the Minnesota False Claim Act
## Minn. Stat. § 15C.01 *et seq.*

151.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

152.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Minnesota, in violation of Minn. Stat. § 15C.01 *et seq.*.

153.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

154.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

155.    Defendant had knowledge (as defined by the Minn. Stat. § 15C.01 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

156.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Minnesota has been, and continues to be, severely damaged.

## COUNT XVII
## Defendant Violated the Reverse False Claims Provision of the Montana False Claims Act
## Mont. Code Ann. § 17-8-401 *et seq.*

157.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

- 30 -

158.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Montana, in violation of Mont. Code Ann. § 17-8-401 *et seq.*.

159.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

160.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

161.     Defendant had knowledge (as defined by Mont. Code Ann. § 17-8-401 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

162.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Montana has been, and continues to be, severely damaged.

## COUNT XVIII
### Defendant Violated the Reverse False Claims Provision of the Nevada False Claims Act
### Nev. Rev. Stat. Ann. § 357.010 *et seq.*

163.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

164.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Nevada, in violation of Nev. Rev. Stat. Ann. § 357.010 *et seq.*.

165.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

166.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

167.     Defendant had knowledge (as defined by the Nev. Rev. Stat. Ann. § 357.010 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

168.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Nevada has been, and continues to be, severely damaged.

## COUNT XIX
## Defendant Violated the Reverse False Claims Provision of the New Hampshire False Claims Act
## N.H. Rev. Stat. Ann. § 167:61-B *et seq.*

169.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

170.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of New Hampshire in violation of N.H. Rev. Stat. Ann. § 167:61-B *et seq.*

171.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of

coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

172. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

173. Defendant had knowledge (as defined by the N.H. Rev. Stat. Ann. § 167:61-B *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

174. As a result of the Defendant's actions as set forth above in this Complaint, the State of New Hampshire has been, and continues to be, severely damaged.


## COUNT XX
## Defendant Violated the Reverse False Claims Provision of the New Jersey False Claims Act N.J. Stat. § 2A:32C-1, *et seq.*

175. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

176. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of New Jersey, in violation of N.J. Stat. § 2A:32C-1, *et seq.*.

177. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

178.	The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

179.	Defendant had knowledge (as defined by the N.J. Stat. § 2A:32C-1, *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

180.	As a result of the Defendant's actions as set forth above in this Complaint, the State of New Jersey has been, and continues to be, severely damaged.

## COUNT XIXI
## Defendant Violated the Reverse False Claims Provision of the New Mexico Medicaid False Claims Act
## M. Stat Ann. § 27-2F-1 *et seq.*

181.	Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

182.	As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of New Mexico, in violation of M. Stat Ann. § 27-2F-1 *et seq.*.

183.	The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

184.	The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

185.    Defendant had knowledge (as defined by the M. Stat Ann. § 27-2F-1 *et seq*.) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

186.    As a result of the Defendant's actions as set forth above in this Complaint, the State of New Mexico has been, and continues to be, severely damaged.

**COUNT XXI**
**Defendant Violated the Reverse False Claims Provision of the New York False Claims Act**
**N.Y. State Fin. § 187 *et seq.***

187.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

188.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of New York, in violation of N.Y. State Fin. § 187 *et seq*..

189.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

190.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

191.    Defendant had knowledge (as defined by N.Y. State Fin. § 187 *et seq*..) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its

rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

192.     As a result of the Defendant's actions as set forth above in this Complaint, the State of New York has been, and continues to be, severely damaged.

## COUNT XXII
## Defendant Violated the Reverse False Claims Provision of the North Carolina False Claims Act
## N.C.G.S. § 1-605 *et seq.*

193.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

194.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of North Carolina, in violation of N.C.G.S. § 1-605 *et seq.*.

195.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

196.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

197.     Defendant had knowledge (as defined by N.C.G.S. § 1-605 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

198. As a result of the Defendant's actions as set forth above in this Complaint, the State of North Carolina has been, and continues to be, severely damaged.

### COUNT XXIV
### Defendant Violated the Reverse False Claims Provision of the Oklahoma Medicaid False Claims Act
### Okla. Stat. Tit. 63 § 5053 *et seq.*

199. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

200. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Oklahoma, in violation of Okla. Stat. Tit. 63 § 5053 *et seq.*.

201. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

202. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

203. Defendant had knowledge (as defined by Okla. Stat. Tit. 63 § 5053 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

204. As a result of the Defendant's actions as set forth above in this Complaint, the State of Oklahoma has been, and continues to be, severely damaged.

### COUNT XXV
### Defendant Violated the Reverse False Claims Provision of the Rhode Island State False

205. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

206. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Rhode Island, in violation of R.I. Gen. Laws. § 9-1.1-1 *et seq.*.

207. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

208. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

209. Defendant had knowledge (as defined by R.I. Gen. Laws. § 9-1.1-1 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

210. As a result of the Defendant's actions as set forth above in this Complaint, the State of Rhode Island has been, and continues to be, severely damaged.

## COUNT XXVI
### Defendant Violated the Reverse False Claims Provision of the Tennessee Medicaid False Claims Act
### Tenn. Code Ann. § 4-18-101 *et seq.* and § 71-5-181 *et seq.*

211. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

212.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Tennessee, in violation of Tenn. Code Ann. § 4-18-101 *et seq*. and § 71-5-181 *et seq*..

213.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

214.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

215.    Defendant had knowledge (as defined by Tenn. Code Ann. § 4-18-101 *et seq*. and § 71-5-181 *et seq*.) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

216.    As a result of the Defendant's actions as set forth above in this Complaint, the State of Tennessee has been, and continues to be, severely damaged.

### COUNT XXIIII
### Defendant Violated the Reverse False Claims Provision of the Texas Medicaid Fraud Prevention Law
### Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

217.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

218.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Texas, in violation of Tex. Hum. Res. Code Ann. § 36.001 *et seq*..

219.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

220.     The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

221.     Defendant had knowledge (as defined by Tex. Hum. Res. Code Ann. § 36.001 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

222.     As a result of the Defendant's actions as set forth above in this Complaint, the State of Texas has been, and continues to be, severely damaged.

## COUNT XXIIIII
## Defendant Violated the Reverse False Claims Provision of the Virginia Fraud Against Taxpayers Act
## Va. Code Ann. § 8.01-216.1 *et seq.*

223.     Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

224.     As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Commonwealth of Virginia, in violation of Va. Code Ann. § 8.01-216.1 *et seq.*.

225.     The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of

coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

226.    The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

227.    Defendant had knowledge (as defined by Va. Code Ann. § 8.01-216.1 *et seq*.) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

228.    As a result of the Defendant's actions as set forth above in this Complaint, the Commonwealth of Virginia has been, and continues to be, severely damaged.

## COUNT XXIX
### Defendant Violated the Reverse False Claims Provision of the Washington State Medicaid Fraud False Claims Act
### RCW § 74.66.005 *et seq.*

229.    Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

230.    As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Washington, in violation of RCW § 74.66.005 *et seq.*.

231.    The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

232. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

233. Defendant had knowledge (as defined by RCW § 74.66.005 *et seq*.) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

234. As a result of the Defendant's actions as set forth above in this Complaint, the State of Washington has been, and continues to be, severely damaged.

## COUNT XXX
### Defendant Violated the Reverse False Claims Provision of the Wisconsin False Claims for Medical Assistance Act
### Wis. Stat § 20.931 *et seq.*

235. Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

236. As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Wisconsin, in violation of Wis. Stat § 20.931 *et seq.*.

237. The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

238. The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

239.   Defendant had knowledge (as defined by Wis. Stat § 20.931 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

240.   As a result of the Defendant's actions as set forth above in this Complaint, the State of Wisconsin has been, and continues to be, severely damaged.

## COUNT XXXI
## Defendant Violated the Reverse False Claims Provision of the District of Columbia Procurement Reform Amendment Act
## D.C. Code Ann. § 1-1188.13 *et seq.*

241.   Relator reincorporates herein by reference each and every allegation of the preceding paragraphs of this Complaint as though fully set forth herein.

242.   As a result of the foregoing conduct, the Defendant knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the District of Columbia, in violation of D.C. Code Ann. § 1-1188.13 *et seq.*.

243.   The claims relevant to this Count include all underpayments of rebates since at least February 2004 to the present that were to be paid by the Defendant as a condition of coverage and therefore payment by CMS and State Medicaid Programs of its outpatient prescription drugs.

244.   The Defendant knowingly and improperly withheld such rebate underpayments knowing that it had an obligation to remit such payments.

245.   Defendant had knowledge (as defined by D.C. Code Ann. § 1-1188.13 *et seq.*) of its obligations to make rebate payments because as a participating member in the Medicaid Rebate Program, Defendant had actual and constructive knowledge of the requirements

underlying its rebate recalculation submissions and that any adjustments that were to be made were binding on Defendant.

246.    As a result of the Defendant's actions as set forth above in this Complaint, the District of Columbia has been, and continues to be, severely damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests that judgment be entered against Defendant, ordering that:

A.    Defendant ceases and desists from violating the False Claims Act, 31 U.S.C. §§ 3729-33, as amended;

B.    Defendant pay not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461; Public Law 104-410), plus three times the amount of damages the United States has sustained because of its actions;

C.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of California has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Cal. Govt Code §12651(a);

D.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Colorado has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Colorado Revised Statute § 25.5-4-305;

E.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Connecticut has sustained because of Defendant's

actions, plus a civil penalty of $10,000 for each violation Connecticut Revised Statute § 17b-301b;

        F.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Delaware has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 6 Del. C. §1201(a);

        G.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Fla. Stat. Ann. §68.082(2);

        H.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Georgia has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Ga. Code Ann. § 49-4-168.1;

        I.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Hawaii has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Haw. Rev. Stat. §661-21(a);

        J.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 740 Ill. Comp. Stat. §175/3(a), as amended;

        K.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Indiana has sustained because of Defendant's actions, plus a civil penalty of $5,000 for each violation of Ind. Code Ann. §5-11-5.5-2(b);

        L.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Iowa has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Iowa Code § 685.2;

M.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Louisiana has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of La. Rev. Stat. §438.3;

N.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Maryland has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of MD Code Ann. § 2-602;

O.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the Commonwealth of Massachusetts has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Mass. Gen. L. Ch. 12 §5B;

P.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Michigan has sustained because of Defendant's actions, plus civil penalties for each violation of Mich. Comp. Laws. §400.607;

Q.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Minnesota has sustained because of Defendant's actions, plus civil penalties for each violation of Minn. Stat. § 15C.02;

R.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Montana has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Mont. Code Ann. §17-8-403;

S.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Nevada has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Nev. Rev. Stat. Ann. §357.040(1)(a), (b);

T.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Hampshire has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.H. Rev. Stat. Ann. § 167:61-B et seq.;

U.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Jersey has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.J. Stat. § 2A:32C-3;

V.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Mexico has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of N.M.S.A. 1978 §27-14-4 and N.M.S.A. 1978 §44-9-3;

W.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New York has sustained because of Defendant's actions, plus a civil penalty of $12,000 for each violation of N.Y. State Fin. §189(1);

X.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of North Carolina has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.C.G.S. § 1-607;

Y.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Oklahoma has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Okla. Stat. tit. 63 §5053.1(B);

Z.      this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Rhode Island has sustained because of Defendant's actions,  plus a civil penalty of $10,000 for each violation of R.I. Gen. Laws §9-1.1-3(a);

AA.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Tennessee has sustained because of Defendant's actions, plus a civil penalty of $25,000 for each violation of Tenn. Code Ann. §71-5-182(a)(1);

BB.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Texas has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of  Tex. Hum. Res. Code Ann. §36.002;

CC.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the Commonwealth of Virginia has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Va. Code Ann. §8.01-216.3(a)(1), (2);

DD.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Washington has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of RCW 74.66.020(1);

EE.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Wisconsin has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of W.S.A. 20.931(2);

FF.    this Court enter judgment against Defendant in an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of D.C. Code Ann. §1-1188.14(a)(1), (2);

GG.    Relator be awarded the maximum "relator's share" allowed pursuant to 31 U.S.C. § 3730(d) and the equivalent provisions of the State False Claims Acts set forth above;

HH.     Relator be awarded all costs of this action, including attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d) and the equivalent provisions of the State False Claims Acts set forth above; and

II.     The United States, the Plaintiff States, and Relator be awarded such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully submitted,

DATED:          September 2, 2014

By:    s/ Ross Brooks

Ross B. Brooks
**SANFORD HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY  10019
Tel:    (646) 402-5650
Fax:   (646) 402-5651
rbrooks@sanfordheisler.com

David W. Sanford (D.C. Bar No. 457933)
**SANFORD HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20009
Tel:    (202) 499-5200
Fax:   (202) 499-5199
dsanford@sanfordheisler.com

*Counsel for Plaintiff-Relator*